Lyon, S. J.,
delivered the opinion of the Court.
John Gass, sr., made and published his last will and testament on the 1st of March, 1837, and died some time in June, 1840. After a protracted contest, this will was established in the Circuit Court of Greene County and admitted to probate in solemn form. The Executors have now brought this bill for a judicial construction of the will and to have directions from the Chancery Court for the proper application of the funds coming to their hands and to guide them in the discharge of the trust. The bill is very properly filed, for it seeks an interpretation of a very curious production, exhibiting the testator as a man of odd and eccentric habits, illiterate, but opinionated — one who having acquired, probably through his own industry, a comfortable estate, was fully disposed to exercise dominion over it to the last, according to his own pleasure or caprice, with but little regard to the claims of natural affection.
We do not think it necessary, however, to bring *213 under review in this opinion but one of the provisions of this will. The decree of the Chancellor in all other respects is so obviously correct and is founded upon such plain and familiar canons in the construction of wills that its correctness need not be gravely argued here.
The portion of the will to which we have reference is in the following language:
“ I furthermore request that my Executors, after all the foregoing items are satisfied, that they put all that my wife and myself has in lots, bonds, and obligations of any kind, or of stock in the Railroad Company, or from the sale of property or lands, and the moneys arising from all to lay it out in purchasing some safe Bank Stock and the interest year and yearly to be applied for the schooling of the children in the bounds of Gass’ School district forever — and if my executors should get old and not able nor willing to attend to my business, I want them to appoint the County Court of Greene county to attend to the business, when there will be no expense forever except for the Clerk in keeping an account on his docket.”
And again in the latter part of his will the testator says:
“I enjoin it on the Commissioners of Gass’ School District to see that they get their rightful share of my estate as mentioned in this my will for the instruction of their children forever.”
It is now insisted by the defendant’s counsel that this bequest is void because they say the donees in this case are the Commissioners of the Gass School District, and that this body not being corporate under *214 the laws then in force, were incapable of taking or administering this charity. We do not yield assent to this argument. On the contrary we think it too plain to admit of a reasonable doubt that the Executors are made trustees under this will to administer this fund. The testator expressly directs his Executors to sell the property set apart for this charity, and invest the proceeds in some safe Bank stock and year and yearly to pay out the interest for the schooling of the children in the bounds of the Gass School District. The subsequent clause of the will where he enjoins it on the Commissioners of the District to see that they “get their right share of his estate” is a mere request and conferred no legal authority on this body whatever to interfere in the administration of this fund. Under this construction the case falls clearly within the principle decided by this Court in Dickson vs. Montgomery, 1 Swan, 348, and is a valid gift to charitable uses.
Again, it is argued for the defendants, that as the proof shows there is no school district in Greene county, having by law, the appellation of “ Gass School District,” it is inadmissable by parol evidence to explain the intention of the testator, by his own declarations. In this reasoning, we do not agree with the defendant’s counsel: There is no ambiguity in the will itself on this point. The bequest is fo,r the benefit of the children in the bounds of Gass’s School District. The doubt arises solely from the defence set up in answer and the parol proof in the record. The object in these cases is to arrive at the intention of the testator. •It is evident that he had in his mind at the time this *215 will was made, a school district that was called, or that he chose to denominate the “ Gass School District.” The case falls clearly within the rule very lucidly expressed by Lord Abinger in 5 M. & W., 363, and sustained by all the authorities on this point. He thus states the rule: “ Now there is but one case in which it appeal's to us that this sort of evidence of intention can properly be admitted, and that is, where the meaning of the testator’s words is neither ambiguous nor obscure, and when the devise is on the face of it perfect and intelligible, but from some of the circumstances admitted in proof, an ambiguity arises as to which of the two or more things, or which of the two or more persons, (each answering the words in the will) the testator intended to express. See also, 1 Greenleaf’s Ev., § 289, et seq.
And this brings us to the real, and only point of difficulty in the case, viz: What district, or what territory, known by sensible and definite bounds, did John Gass intend by the name of the “Gass School District,” in his will? This difficulty has been raised by extrinsic facts and circumstances, and we must proceed'to enquire whether they have solved it.
To understand this question properly, it must be stated in the outset, that there are three districts in Greene county, for each of which pretensions may be, and have been set up as the true locus of the “ Gass School District.” There are, first, the 12th Civil District of Greene county; second, the district including the school house at the bridge; and, third, the district around the school house at the meeting house and grave yard. And, now, it is observable as a sigiiifi- *216 cant fact in this case, that the complainants, in their bill, indicate the I2th civil district as the true district ■in question — that the School Commissioners of that district (naturally enough) claim it as such, that the proof has been taken on the part of complainants, with that view, that it was so decreed by the Chancellor, and that it has been so argued in, this Court. And yet, we hold this to be an error. The testator neither did nor could have intended the 12th Civil District, nor any boundary substantially even, coinciding with it as the “ Gass School District.” It was not until the passage of the act of the' 24th January, 1838, that the civil districts were made Common School districts. This was nearly eleven months after the date of the will. Previous to this time, a Commissioner of Common Schools was appointed for each Captain’s company in the several counties of the State, and the Commissioners for a county formed a board, and were empowered and directed to lay off and divide the counties into school districts of convenient size. This system prevailed at the time the testator wrote his will. We do not insist that the passage of the act of January, 1838, subsequent to the date of the will, is conclusive of this question. If there was at the date of the will any school district substantially coinciding with the 12th Civil District in its boundaries, this would be deemed sufficient if it is shown that the testator called that the “ Gass School District,” and intended his charity for the children within its bounds. But was this so ? It is true, that William Hawkins, a witness for complainants, says, that under the first regulation establishing free schools the Commissioners laid off a school *217 district including the testator’s residence, that a school house was built in this district near a bridge, that testator gave the land on which the school house was built and promised to aid in building it, and that this has remained a free school house ever since. That, “under the regulations establishing the bounds of the civil districts in the county, the bounds of the school district including the testator, were not changed, but remained the same, with little alteration, as far as witness had any recollection.” ""
In the first place, it may be observed of this testimony, that the witness does not say the bounds of this school district were the same as the bounds of the 12th Civil District, although it may be inferred that such was his meaning. In the second place, it is to be observed that this testimony is substituted by agreement of the parties for what the witness had said— the record in the case having been destroyed by fire, and the witness being dead at the time of this accident, his testimony could not be retaken. It cannot, therefore, be entitled to the same weight as if he had stated his own testimony in his own language. But, thirdly, it is the only testimony to this point in the record, and is explained by other more accurate and reliable evidence in the record.
E. Babb, witness for complainants, states that previously to laying ofF the civil districts there were school districts, that when the civil districts were laid off “ each civil district embraced the districts of severed school houses.” He then proceeds to give the bounds of the school district at the bridge. It is not even attempted to show that these boundaries coincide with *218 those of the 12th Civil District. How easily this could have been done, if it were so, need not be said.
Joseph Bradley proves that the County Court appointed John Gass, the testator, and Hugh Carter, to lay of Capt. Gass’s and Capt. Dill’s companies respectively, into convenient school districts; that, after dividing them, they each had a corner in their respective companies too small for a school district; that these corners adjoined, and, on petition, they were consolidated and formed one school district; that the meeting house and grave yard was considered the centre of this district, and a free school was taught there, and witness was the first teacher, and continued to teach there two yeai’s.
Leonard Starnes, refers to this district in his testimony, and gives an extract from the Commissioners’ books, showing the order for the consolidation of the two fractions or odd corners into one school district. Alex’r R. Anderson, keeper of the record of the School Commissioners, gives an extract of the minutes, showing the same fact, signed by the testator as Chairman of the Board of Commissioners. Several witnesses prove that the meeting house and school room at the bridge, as well as the testator’s residence, are within the bounds of the 12th Civil District. Other witnesses speak of another school district in the 12th Civil District. Thus. it is shown by the most conclusive testimony, that there was at least two and probably three school districts in the 12th Civil District, at or about the time the testator made his will.
Can it be argued, with any propriety, that the testator intended to embrace, under the words “ Gass’s *219 School District,” three distinct school districts ? Certainly not. We hold it, therefore, demonstrable, that the 12th Civil District was not contemplated by the testator in the provisions of his will under consideration.
We are next to. inquire which of the other two districts — the one including the school house at the bridge, and the other the meeting house and grave yai’d — the testator intended, for we are free to admit that, in our opinion, it must have been one or the other.
The difficulty of arriving at any certain determination between these two districts is foreshadowed in the facts already stated: That the executors .and executrix, the friends and wife of the testator, without any interest to' bias their judgment, indicate the 12th Civil District as the true “ Gass School District; that the counsel for complainants so argue; that the Chancellor so decreed; and that the various witnesses so believe and state.
It would extend this opinion to an unreasonable length, to enter upon a minute analysis of the testimony of the several witnesses who speak to this point. • We must content ourselves with a summary of the evidence. And first, then, of the school district at the bridge. It is proved that the school house is on the testator’s land; that he gave the land on which the house is built; that it is near his residence;* that the boundary of the.district includes the residence of the testator; that it was frequently called Gass’s School, or Gass’s School District; that the testator *220 taught a Sabbath school there, and that he has been heard to call it Gass’s school house and district.
On the other hand, in favor of the school district at the meeting house, it is equally well proved, that the testator laid off this district himself; that he called it “ my districtthat he refused to do any thing further towards the school house at the bridge, than to give the land on which it was erected, because it was not his district; that he had principally contributed to building the church, and that his affections were fixed on it; that the grave yard contained the ashes of his wife and children, and that he contemplated taking his final repose there himself; that he had taught Sabbath school at the school house there, and that various witnesses understood him to refer to this district as his, the church and grave yard as his, and under his care.
The witnesses, as far as can be seen by this Court, are equally intelligent, equally disinterested, equally well acquainted with the testator. Either class, standing unopposed, would be sufficient to fix the locality. So complete a balance of opposing forces, we have rarely seen. If, then, there is so great a contrariety of opinion among these persons, so well acquainted with the testator, his prejudices and affections', how shall this tribunal be able to compose the dispute? We are unable to do so. To attempt it would be, on our part, to make the will of John Gass. We are, ’therefore, constrained to reverse the decree of the Chancellor to this extent, and to hold this bequest void for uncertainty.